**IN THE UNTIED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **MARIE JACKSON, Administrator of** ) | |
| **the Estate of Peggy J. Jackson,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL NO. 3:08cv182** |
| ) | |
| **UNITED AIRLINES, INC. &** ) | |
| **TRANS STATES AIRLINES, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant United Airlines, Inc.'s Motions *in Limine* to Preclude the Use of Peggy Jackson's Deposition Testimony and Limit Plaintiff's Testimony Regarding Damages (Docket Nos. 86 & 116), and Defendant Trans States Airlines, Inc.'s duplicative Motions *in Limine* to Preclude the Use of Peggy Jackson's Deposition Testimony and Limit Plaintiff's Evidence Regarding Damages (Docket Nos. 62 & 113). The parties having fully briefed the issues and provided sufficient supporting documentation, the Court concludes that oral argument would not be of additional assistance in the decisional process. For the reasons set forth herein, the motions will be DENIED as to the total exclusion of Plaintiff's deposition testimony and TAKEN UNDER ADVISEMENT as to the remaining issue regarding the admissibility of certain damages evidence.

### I. FACTUAL BACKGROUND

Plaintiff, Peggy J. Jackson, initiated this action against Defendants United Airlines, Inc. ("United") and Trans States Airlines, Inc. ("Trans States") alleging that she sustained injuries

due to the Defendants' negligence. (Compl. ¶¶ 10-11.)[1] On November 30, 2006, Plaintiff's daughter, Marie Jackson, made arrangements for Plaintiff on the United Airlines website for her mother to travel from Sacramento, California to Richmond, Virginia, via Chicago, Illinois, on January 5, 2007. (M. Jackson Dep. at 17.) Marie Jackson notified United Airlines when she purchased the United Airline ticket that her mother would require wheelchair assistance in Richmond. (Compl. ¶ 6; M. Jackson Dep. at 19.) On January 3, 2007, Marie Jackson contacted United to confirm the wheelchair request, because Plaintiff's electronic ticket did not indicate that the request had been noted. (M. Jackson Dep. at 18-19.) The United agent, with whom Marie Jackson spoke, confirmed (according to Marie Jackson) that the wheelchair request had been made. (M. Jackson Dep. at 19.)

Plaintiff flew from Chicago to Richmond on United Flight 8042, for which Defendant Trans States provided the flight crew. (Basham Decl. ¶ 11.) Once aboard Flight 8042, Plaintiff asked the flight attendant, a Ms. Diane Pongallo ("Pongallo"), for wheelchair assistance when she arrived in Richmond. (Pongallo Dep. at 11.)[2] Pongallo notified the pilot that there was a wheelchair request, and she testified that the usual procedure would have been for the pilot to then notify the ground crew of the request. (Pongallo Dep. at 14, 31.) However, Pongallo did not know whether the pilot, in fact, had made the request. (Pongallo Dep. at 31.)

As United Flight 8042 was deboarding in Richmond, Pongallo asked Plaintiff to move to the front of the plane to wait for the wheelchair assistance to arrive. (Pongallo Dep. at 13-14.) Plaintiff told Pongallo that she felt she could make her way up the jetway, without a wheelchair, and she proceeded to do so. (Pongallo Dep. at 16; P. Jackson Dep. at 68.) Pongallo testified in her discovery deposition that she did not assist the Plaintiff on the jetway, nor did she see anyone

---

[1] All references to the Complaint are to Plaintiff's Amended Complaint (Docket No. 13).
[2] All statements are attributed to discovery deposition testimony.

from the flight do so. (Pongallo Dep. at 16, 39.) Plaintiff maintains, however, that she was accompanied and assisted by the co-pilot of the aircraft on the jetway to the gate. (P. Jackson Dep. at 71.)

Pongallo further testified in deposition that once Ms. Jackson walked out to the gate, she, Pongallo, remained in the plane to clean and perform her various "checks" for the next flight, after which she walked up the jetway and saw Plaintiff sitting at the top of the jetway, presumably waiting for wheelchair service to arrive. (Pongallo Dep. at 17.) Jackson again asked Pongallo how long it would take for the wheelchair to arrive, and Pongallo replied that while she did not know, she again encouraged Plaintiff to wait for the wheelchair service before trying to go to the baggage claim area on her own. (Pongallo Dep. at 17.) Pongallo thereupon left Ms. Jackson and proceeded to a nearby restroom. (Pongallo Dep. at 18.) When Pongallo exited the restroom, she noticed that Plaintiff was walking, unassisted, from the gate area towards the baggage claim location. (Pongallo Dep. at 18.) However, once Plaintiff had passed her, Pongallo heard some commotion behind her, turned around, and observed that Plaintiff had fallen to the floor. (Pongallo Dep. at 19.) Pongallo went immediately to assist Plaintiff. (Pongallo Dep. at 19.)

Plaintiff testified in her own discovery deposition that she waited approximately thirty minutes on the plane and at the gate before she decided to walk to the baggage claim area without assistance or the use of a wheelchair. (P. Jackson Dep. at 74.) Plaintiff further testified that she proceeded approximately fifteen feet through the terminal before she slipped and fell. (P. Jackson Dep. at 73.) Plaintiff alleges that because of the amount of time that had passed, and the lack of personnel at the gate to ask for further assistance, she concluded that she had no

choice but to walk to the baggage claim area unassisted, which resulted in her falling and suffering injury, later determined to be a comminuted fracture of her left shoulder. (Compl. ¶ 7.)

Plaintiff was deposed in November 2008, after the Court directed that her deposition would be allowed to take place outside of this District due to letter-evidence from her treating physician confirming that she was too enfeebled to travel to this District for a deposition, as otherwise provided for by procedural rule (Docket No. 32.) In reviewing the issue, based on the submissions by, and conference call conversation with counsel, it was represented that Plaintiff was also struggling with the early stages of dementia, which contributed to her inability to travel. Shortly after her deposition was taken in California, Plaintiff passed away in February 2009, and her daughter, Marie Jackson, was thereupon substituted as the Plaintiff in the litigation in her capacity as the Administrator of her mother's estate. (Docket No. 108.) The Defendants essentially argue that Peggy Jackson's November 2008 deposition testimony cannot be used at trial by Plaintiff because, although obviously "unavailable" for trial testimony (Fed R. Civ. P. 32(a)(4)(A)), she was mentally incompetent at the time of her deposition such that her deposition testimony cannot be deemed to be sufficiently reliable to be admitted into evidence (Docket Nos. 113 & 116.)

## II. ANALYSIS

Initially, the Defendants argue that the deposition testimony of Peggy Jackson cannot be utilized at trial because of a concept of "judicial estoppel," whereby Plaintiff's counsel objected to Peggy Jackson having to make herself available for discovery deposition in the District where the action was pending, as is normally required, because of issues of infirmity, including mental incapacity, and yet now seeks to offer the deposition testimony as reliable evidence at trial. (Def. United's Mem. in Supp. Mot. *in Limine* "United's Mem." at 7; Def. Trans States' Mem. in

Supp. Mot. *in Limine* "Trans States' Mem." at 5; Pl.'s Mem. in Opp. Trans States' Mot. *in Limine* "Pl.'s Mem." at 1.)[3] In general terms, "judicial estoppel" precludes a party from adopting a factual position at one stage of the litigation process contrary to a factual position previously accepted by the court in the litigation. 1000 Friends of Md. v. Browner, 265 F.3d 216, 226 (4th Cir. 2001); Buchanan County v. Blankenship, 496 F. Supp. 2d 715, 718 n2 (W.D.Va. 2007). However, the evidence presented in regard to the issue here indicated that Plaintiff was unable to travel primarily because of physical, not mental, infirmities. (Pl.'s Mem. at 1.) Moreover, it is noted that the Defendants made liberal reference to Plaintiff's deposition testimony as substantive evidence in support of their respective motions for dispositive relief, and it would therefore be inequitable to have allowed such use by the defense, while precluding the use of such evidence at trial by Plaintiff. Accordingly, the motions *in limine* cannot be granted on the asserted basis of "judicial estoppel" as espoused by the defense.

The primary argument of the Defendants, in effect, is that the deposition testimony of Plaintiff is so incoherent and otherwise non-responsive that the Court must, as a matter of law, preclude its use at trial in its entirety due to Plaintiff's mental incapacity at the time. (United's Mem at 4; Trans States' Mem. at 2.) Pursuant to Federal Rule of Evidence 601, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State Law applies the rule of decision, the competency of a witness shall be determined in accordance with State Law." Fed. R. Evid. 601. Accordingly, as the only remaining claim in the matter is a common law negligence claim, Peggy Jackson's competency to offer testimony must be evaluated in accordance with Virginia law.

---

[3] As each of the Defendants has provided individual memoranda in support of their pending motions, the Court will utilize a short citation form when referring to the individual submissions, with the understanding that the references refer to the respective memoranda submitted in regard to the motion being discussed by the Court.

The Supreme Court of Virginia has held that a competence analysis commences with "the presumption that all persons are competent, and the party challenging this presumption has the burden of establishing incompetency." Jones v. Peacock, 591 S.E.2d 83, 87 (Va. 2004) (citing Brown v. Resort Developments, 385 S.E.2d 575, 576 (Va. 1989)). The Virginia Supreme Court has further held that "the term [competency] refers to the qualification of a witness to speak to a particular matter [and] encompasses . . . whether [a witness] had firsthand knowledge of the facts he was prepared to relate." Walters v. Littleton, 290 S.E.2d 839, 841 (Va. 1982). Under Virginia law, the trial judge is responsible for determining whether a witness is competent to testify based upon the circumstances presented to him. Durant v. Commonwealth, 375 S.E.2d 396, 400 (Va. App. 1988) (citing Shrader v. Commonwealth, 343 S.E.2d 375, 377-78 (Va. App. 1986)). However, "the weight to be given the evidence and a determination of the witness's credibility are matters for the fact finder to decide." Durant, 375 S.E.2d at 400-01 (citing Bridgeman v. Commonwealth, 351 S.E.2d 598, 601-02 (Va. App. 1986)).

Here, Defendants assert that Peggy Jackson was incompetent, and as such, her deposition testimony should not be admitted into evidence. (United Mem. at 10; Trans States Mem. at 5.) However, in support of their argument, Defendants rely on case law standards applied to child witnesses who are typically deemed incompetent to offer evidence because of their basic lack of experience and maturity, as contrasted with issues of the mental capacity of an adult to offer evidence. See Jones v. Commonwealth, 526 S.E.2d 281, 288 (Va. App. 2000). Even though Peggy Jackson may have been diagnosed with the onset of dementia, and there are portions of her deposition testimony that are not coherent, or at least demonstrate confusion and misunderstanding, e.g., it is not the year 1990 (P. Jackson Dep. at 13), not only must the Court presume her competency (see Peacock, 591 S.E.2d at 87), her testimony concerning the salient

6

events of the specific incident at the airport does not exhibit such a level of confusion, let alone mental incompetency, to preclude its use at trial, as a matter of law, thereby foreclosing consideration by the jury.

Furthermore, the essential sequence of events as described by her are corroborated by another, Ms. Pongallo,[4] Accordingly, the deposition testimony of Plaintiff will be permitted to be used at trial (subject to the limitations imposed by the accompanying Order to eliminate unnecessary and confusing redundancy and irrelevancy) for the jury, as factfinder, to afford it, pursuant to appropriate instruction, such weight as they deem appropriate. See Walters, 290 S.E.2d at 841, Durant, 395 S.E.2d at 400. At the same time, the Court will permit the defense to offer such excerpts from the deposition as it may urge demonstrates overall confusion, etc., as that may affect the jury's assessment of credibility, in order to maintain a balanced perspective.

The Defendants also challenge the admissibility of any evidence by Plaintiff concerning medical or related expenses beyond that of immediate and directly-related medical treatment. (United Mem. at 4; Trans States Mem. at 4.) The Defendants based their objections on the premise that expert testimony was not designated and identified to substantiate such claims as are made for extended care expenses, e.g., hospice and nursing home expenses, so as to allow for discovery and challenge, and that such additional expenses are otherwise too attenuated and removed from damages attributed to the injuries actually incurred, especially given Plaintiff's debilitating mental condition. (United Mem. at 4-5; Trans States Mem. at 4-5.) Plaintiff's counsel has indicated that he intends to rely on the testimony of Peggy Jackson's treating physician and daughter, the substituted party plaintiff, to establish the necessary foundation for the introduction of such evidence as to the "extended" damages.

---

[4] But for, perhaps, the relatively minor discrepancy of whether Jackson was escorted up the jetway by a member of the flight crew.

The Court specified in its scheduling Order of May 22, 2008 (Docket No. 7)[5] that "treating physicians" are not subject to disclosure (nor the substance of their opinions) in a Rule 26(a)(2)(B) expert designation. Fed. R. Civ. P. 26(a)(2)(B); see also McDonald v. Wal-Mart Stores East, L.P., No. 3:07cv425, 2008 WL 153782, at *3 (E.D. Va. Jan. 14, 2008). "Expert" medical witnesses are those who are retained or specially employed to offer an opinion of causation related to their diagnosis of a claimant's condition and the alleged claim(s) involved. Id. While treating physicians process knowledge and opinions as to causation and prognosis that result from their ongoing treatment of a patient, they are not specifically retained to testify and offer an expert opinion as to causation in a particular matter. See McDonald, 2008 WL 153782, at *3, see also Moore v. McKibbon Brothers Inc., No. 5:98cv923BO2, 1999 WL 1940029, at *1 (E.D.N.C. Jan. 8, 1999).

While Plaintiff's proposed evidentiary foundation for the introduction of such evidence appears to involve a "treating physician" in the sense of one who had attended to the deceased Plaintiff over time and was not, therefore, "specially retained" to offer his opinion as to whether the additional damages of the need for extended and special care resulted from the subject incident, he will be presumably prepared to do so at trial. Accordingly, the issue is whether the defense has been prejudiced in any way, namely, being denied a fair and full opportunity to "discover" and challenge the witness's basis for any opinion as to causation and relation of the extended damages to the alleged negligence of the Defendants.

Presumably, Plaintiff, by counsel, did not designate the treating physician as an expert in a Rule 26 disclosure, but the Court observes that his identity and availability for discovery was

---

[5] The Court recognizes that another scheduling Order has been issued, but as discovery had been closed at that point and the provisions are the same, the Court references the first scheduling Order of May 22, 2008.

provided in the responses to standard written interrogatory demands for discovery as to damage claims. (United Ex. A, Trans States Ex. A)[6] Accordingly, the defense has had a fair opportunity to "discover" such opinions as to the claims for all damages, and the Court will not re-open discovery for them to do so now, especially where the Court has already foreclosed and denied Plaintiff's counsel's request to re-open discovery for other pursuits because the discovery period had closed (Docket No. 112.) However, where the Court has concerns regarding the sufficiency of any evidentiary foundation for such evidence as to the necessity for extended care and attention in terms of being sufficiently related to injuries received as a result of the subject incident, the Court will first entertain such related "foundation" testimony at trial, outside the presence of the jury, in order to determine, subject to the voir dire of the defense, whether the evidence can then be presented to the factfinder for their ultimate consideration.

### III. CONCLUSION

For the reasons set forth herein, the Defendants' motions to exclude the deposition testimony of original Plaintiff, Peggy Jackson, are DENIED, subject to conditions imposed by the accompanying Order, and the motions to exclude certain damages evidence are TAKEN UNDER ADVISEMENT, subject to trial development.

An appropriate order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: June 17, 2009

---

[6] At the very least, such standard discovery inquiry should have been made and pursued in a timely and complete fashion by the defense.